HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVE FOX and CHERIE FOX, husband and wife,

        Plaintiffs,

    v.

STATE FARM INSURANCE COMPANY,

        Defendant.

CASE NO. C15-535RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on three motions: (1) Defendant State Farm Insurance Company's ("Defendant") Motion to Compel Rule 35 Examination (Dkt. # 19), (2) Plaintiffs Steve Fox and Cherie Fox's (collectively, "Plaintiffs") Motion to Amend Complaint (Dkt. # 23), and (3) Defendant's Motion for Protective Order (Dkt. # 38). For the reasons set forth below, the Court will **GRANT** Defendant's Motion to Compel Rule 35 Examination, **DENY** Plaintiffs' Motion to Amend, and **GRANT** Defendant's Motion for Protective Order as unopposed (Dkt. # 38).

## II. BACKGROUND

The Court derives the following facts from the Plaintiffs' Complaint. Plaintiffs purchased an insurance policy from Defendant that included under-insured motorist ("UIM") coverage. *See* Dkt. # 5-1 ("Compl.") ¶ 4.1 That policy was in effective in August 2010 when Mr. Fox was involved in a car accident. *See id.* ¶¶ 4.1-4.2. That

ORDER – 1

accident was caused by another driver (*see id.* ¶¶ 4.2-4.4) and as a result, Mr. Fox claims injuries and Mrs. Fox claims loss of consortium (*see id.* ¶¶ 4.5-4.7).  Plaintiffs claim that because the damages Mr. Fox suffered exceeded the other driver's liability policy limits, Defendant is liable for the full extent of Mr. Fox's injuries within the limits of the policy. *See id.* ¶ 4.13.

### III.  LEGAL STANDARD

a. General Principles Governing Discovery

The Court has broad discretion to control discovery.  *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011).  That discretion is guided by several principles.  Most importantly, the scope of discovery is broad.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*  The Court, however, must limit discovery where it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

b. Federal Rule of Civil Procedure 35 ("Rule 35")

Rule 35 provides that a "court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."  "One of the purposes of Rule 35 is to 'level the playing field' between parties in cases in which a party's physical or mental condition is in issue." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995).  Such an order: "(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must

ORDER – 2

specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2).

Generally speaking, "Rule 35 examinations require an additional showing that the matter be 'in controversy' and that 'good cause' exists for ordering the examination sought." *Houghton v. M & F Fishing, Inc.*, 198 F.R.D. 666, 667 (S.D. Cal. 2001) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964)). Additionally, "[b]ecause of the intrusive nature of examinations, they are not granted as a matter of right, but rather as a matter of discretion." *Muller v. City of Tacoma*, No. 14-CV-05743-RJB, 2015 WL 3793570, at *2 (W.D. Wash. June 18, 2015) (citing Fed. R. Civ. P. 35(a); *Coca-Cola Bottling Co. v. Negron Torres*, 255 F.2d 149 (1st Cir. 1958)); *Ligotti v. Provident Life & Cas. Ins. Co.*, 857 F. Supp. 2d 307, 318 (W.D.N.Y. 2011) (citing *O'Quinn v. New York University Med. Ctr.*, 163 F.R.D. 226, 228 (S.D.N.Y. 1995)).

  c. <u>Motion for Leave to Amend</u>

Ordinarily, in considering a motion for leave to amend, the Court applies the liberal standard contained in Rule 15. *See* Fed. R. Civ. P. 15(a). However, where a party seeks leave to amend a pleading after the deadline for doing so set forth in the scheduling order, the Court applies the standard set forth in Rule 16. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 16, "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The "good cause" standard primarily considers the diligence of the party seeking the amendment of the pretrial deadlines. *Johnson*, 975 F.2d at 609. A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *Johnson*, 975 F.3d at 609.

ORDER – 3

## IV. DISCUSSION

a. Defendant's Motion for Protective Order (Dkt. # 38)

The Court begins with Defendant's Motion for a Protective Order. Dkt. # 38. In that Motion, Defendant requests an order relieving it from providing certain discovery relating to Plaintiffs' extra-contractual claims. *See id.* As its basis, Defendant argues that those claims are not yet part of the lawsuit as Plaintiffs' Motion for Leave to Amend has not yet been granted. *See id.* at 1-2. Defendant has also included a certification that it met and conferred with Plaintiffs in conformity with this Court's Local Rules. *See* Dkt. # 38-1 (Jensen Decl.) ¶ 1; Local Rules W.D. Wash. LCR 37(a)(1).

Plaintiffs have not filed an opposition. Pursuant to this Court's Local Rules, "if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." *See* Local Rules W.D. Wash. LCR 7(d)(2).

The Court finds that granting Defendant's Motion is well warranted. The Rules currently provide that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As Defendant rightly notes, discovery relating to Plaintiff's proposed bad faith and Washington Insurance Fair Conduct Act ("IFCA") claims is not relevant to this case as currently presented. *See* Compl. (alleging only breach of contract claim). Making this discovery even less relevant, as elaborated more fully below, is the fact that the Court will not give Plaintiffs leave to add these newly proposed claims.

Accordingly, the Court **GRANTS** Defendant's Motion for Protective Order. Dkt. # 38.

b. Plaintiffs' Motion for Leave to Amend (Dkt. # 23)

Next, the Court addresses the Plaintiffs' Motion for Leave to Amend. Dkt. # 23. Plaintiffs bring this motion under the auspices of Rule 15 (*see* Dkt. # 23 at 8-10), but as Defendant rightly notes (*see* Dkt. # 34 at 4-5), motions for leave to amend brought after

ORDER – 4

the deadline established in a scheduling order are governed by Rule 16(b) (*see Johnson*, 975 F.2d at 609; *see also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004) (collecting cases)). Plaintiffs filed their Motion on December 4, 2015 (Dkt. # 23), but amended pleadings in this case were due 16 days before that – November 18, 2015 (Dkt. # 9). Under this standard, the Court "focuses on the reasonable diligence of the moving party." *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (citing *Johnson*, 975 F.2d at 609); *DZ Bank AG Deutsche Zentral-Genossenschaftbank, Frankfurt AM Main v. Choice Cash Advance, LLC*, 918 F. Supp. 2d 1156, 1170 (W.D. Wash. 2013).

Under the Rule 16(b) standard, "[t]he pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Zivkovic*, 302 F.3d at 1087 (quoting *Johnson*, 975 F.2d at 609). However, "[i]f the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Id.*

The record makes clear that Plaintiffs were more than able to seek leave to amend well before the deadline for doing so.

First, Plaintiffs themselves concede that they were prepared to amend their Complaint to include IFCA claims as early as March 5, 2015. *See* Dkt. # 23 at 4; Dkt. # 24-16 (O'Halloran Decl.) Ex. 16 at 1-2. Plaintiffs claim, however, that they did not seek to amend their Complaint earlier because they "relied on [Defendant's] representations that it had accepted all of [Mr. Fox's] past economic damages." *See* Dkt. # 23 at 6-7.

Based on this Court's reading, much of Plaintiffs' argument focuses on their apparently mistaken or optimistic reliance on one of Defendant's supposed representations that it had accepted all of Mr. Fox's past economic damages. *See* Dkt. # 23 at 6-7; Dkt. # 37 at 2. In other words, Plaintiffs contend that much of their strategy thus far has been based on the belief that "his insurer had simply made a calculation mistake" and that they "never anticipated this litigation would proceed past an initial

ORDER – 5

discovery period." *See* Dkt. # 37 at 1. Alternatively, Plaintiffs contend that they declined to amend their Complaint in reliance on continuing negotiations with Defendant. *See* Dkt. # 23 at 5-7. Finally, Plaintiffs appear to argue that they were misled by case law provided by Defendant's counsel. *See id.* at 7.

Plaintiffs' first argument is unavailaing. Defendant's March 24, 2015 letter responding to Plaintiffs' IFCA letter indicates that in making its initial evaluation of Mr. Fox's UIM claim it "relied on the opinion of family practice physician Jack Calabria, DO, one of [Mr. Fox's] treating physicians, and the result of its investigation." *See* Dkt. # 24-17 (O'Halloran Decl.) Ex. 17 at 1. However, Defendant's letter does not unequivocally state that Defendant simply "accepted" all of Mr. Fox's past economic damages. Read in context, the letter outlines (in significant detail) the evidence presented and considered by Defendant in evaluating Mr. Fox's claim and elaborates Defendant's position why the disagreement between the Parties did not give rise to an IFCA claim. *See id.* at 4-7. More specifically, the only portion of the letter indicating that Defendant "accepted all of Mr. Fox's supported medical treatment and his past wage loss claim" indicates that it was done so in the context of Defendant's August 26, 2014 offer. *See id.* at 7. In other words, it does not appear to this Court that Defendant "accepted" the veracity and merits of all of Mr. Fox's claimed damages, only that its evaluation of Mr. Fox's claim was premised upon accepting these as true. Additionally, the evidentiary value of Defendant's statement during settlement negotiations is questionable. Federal Rule of Evidence 408(a) specifically states that "conduct or a statement made during compromise negotiations about the claim" "is not admissible--on behalf of any party-- either to prove or disprove the validity or amount of a disputed claim."

Plaintiffs' reliance upon this purported representation, in this Court's view, was not reasonable.

Nevertheless, the Court proceeds to Plaintiffs' second argument – that they reasonably delayed in seeking leave to amend based upon their negotiations with

ORDER – 6

Defendant.  *See* Dkt. # 23 at 5-7; Dkt. # 37 at 2.  Numerous courts have found that settlement negotiations do not constitute good cause to modify a case schedule.  *See e.g., Rybski v. Home Depot USA, Inc.,* No. CV-12-751-PHX-LOA, 2012 WL 5416586, at *2 (D. Ariz. Oct. 17, 2012) ("The parties' settlement negotiations or mediation do not constitute good cause to continue the Rule 16 deadlines."); *Lehman Bros. Holdings v. Golden Empire Mortg., Inc.,* No. 1:09-CV-01018LJOJLT, 2010 WL 2679907, at *2 (E.D. Cal. July 2, 2010) ("Here, the parties' willingness to settle this case is admirable. However, settlement discussions generally are not an 'unanticipated' development."); *Irise v. Axure Software Sols., Inc.,* No. CV08-03601SJO JWJX, 2009 WL 3615973, at *3 (C.D. Cal. July 30, 2009) ("Although Axure attempts to blame its delay on ultimately unsuccessful settlement negotiations that occurred between March 2009 and early May 2009, this is no excuse for Axure's lack of diligence").  Even if Plaintiffs believed that their settlement negotiations with Defendant would ultimately bear fruit and avoid more protracted litigation, they still were under an obligation to seek leave to amend their Complaint to add any claims they intended to pursue within the time dictated in the scheduling order.  Plaintiffs failed to do so and cannot blame unsuccessful settlement negotiations for their lack of diligence.

Finally, Plaintiffs appear to contend that Defendant misled them to avoid seeking leave to amend by pointing them to two cases, *Smith v. State Farm*, No. C12-1505-JCC, 2013 WL 1499265 (W.D. Wash. Apr. 11, 2013) and *Zweber v. State Farm*, 39 F. Supp. 3d 1161 (W.D. Wash. 2014), for the proposition that they could not seek leave to amend. *See* Dkt. # 23 at 7.  Plaintiffs correctly note that these cases do not actually stand for the proposition that Plaintiffs could not seek leave to amend at that juncture; rather, they deal with whether a plaintiff's bad faith and related claims were barred by res judicata when brought after final judgment in a state court proceeding.  *See Zweber*, 39 F. Supp. 3d at 1165.  Nevertheless, the Court is not persuaded by Plaintiffs' argument for the simple fact that even a quick look at these cases reveals that they do not deal with amendment of

ORDER – 7

pleadings.  Plaintiffs cannot blame poorly cited case law as a basis for failing to diligently seek leave to amend, especially when they had 9 days to read those cases and seek leave to amend.  *See* Dkt. # 24-23 (O'Halloran Decl.) Ex. 23 at 2.  Simply put, Plaintiffs cannot claim that they reasonably relied upon Defendant's cited case law as a reason for delay.

Ultimately, the Court finds that the most damaging fact to Plaintiffs' position is that they failed to seek leave to amend on November 9, 2015, when Defendant unequivocally repudiated any stipulation that it "accepted certain itemized medical damages, wage loss damages, and general damages."  *See* Dkt. # 36 (Aragon Decl.) Exs. E at 2, F at 3 ("Accordingly, State Farm does not agree to the stipulation you request.").  At that point, Plaintiffs certainly knew that Defendant was renouncing the basis for Plaintiffs' reason for not including their bad faith and IFCA claims.  That point was still 9 days before the deadline for seeking leave to amend.  *See* Dkt. # 9.  Nevertheless, Plaintiffs waited 25 days to seek leave to add these claims.  *See* Dkt. # 23.  That is not reasonably diligent.

Because the Court finds that Plaintiffs were not diligent in seeking leave to amend, its inquiry ends.  *See DZ Bank*, 918 F. Supp. 2d at 1170 (quoting *Johnson*, 975 F.2d at 609).  As a result, the Court need not consider prejudice to Defendant if leave to amend is granted.  Nevertheless, the Court will note that bad faith claims often involve the presentation of expert evidence (*see* 35 Matthew King, *Washington Insurance Law And Litigation* § 23:7 (2015-2016 ed.) ("the use of experts in bad faith litigation is common.")) and allowing amendment at this juncture may necessitate additional modifications to the expert discovery deadline.

Finally, the Court declines Plaintiffs' apparent invitation to parse through their proposed amended complaint to identify "those damages claims that cannot possibly prejudice State Farm."  *See* Dkt. # 37 at 3.  The focus of the inquiry was on *Plaintiffs'* lack of reasonable diligence, not prejudice to Defendant.

ORDER – 8

1    Accordingly, the Court will **DENY** Plaintiffs' Motion for Leave to Amend. Dkt. # 23.

c. Defendant's Motion to Compel (Dkt. # 19)

Finally, the Court addresses Defendant's Motion to Compel Rule 35 Examination. Dkt. # 19. Under Rule 35,[1] the Court "may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Such an order: "(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2). Additionally, such motions are contingent on a showing that "the matter be 'in controversy' and that 'good cause' exists for ordering the examination sought." *Houghton*, 198 F.R.D. at 667 (citing *Schlagenhauf*, 379 U.S. at 117).

Defendant seeks to have Mr. Fox examined by an orthopedic surgeon, Alan Brown, MD. *See* Dkt. # 19 at 1. Dr. Brown will opine on the cause of Mr. Fox's injuries, the reasonableness of the care he has received to date, and a medical opinion regarding Mr. Fox's future medical expenses and lost wages. *See* Dkt. # 31 at 2. Defendant has attached a copy of Dr. Brown's *curriculum vitae* and it does not appear that his qualifications or licensing are in dispute. *See* Dkt. # 20-10 (Aragon Decl.) Ex. J.

Moreover, it does not appear that Plaintiffs contest that they received adequate notice of the Motion, as the Parties conferred on this issue for several weeks. *See* Dkt. # 20 (Aragon Decl.) Exs. B (letter dated November 5, 2015 formally requesting Rule 35 examination by Dr. Brown), C, E (emails discussing Rule 35 examination). In fact, the Parties appeared to have exchanged correspondence regarding a stipulation to a Rule 35

---

[1] The Court notes that language in the policy already requires Mr. Fox to attend an examination. *See* Dkt. # 20-9 (Aragon Decl.) Ex. I at 2 ("A ***person*** making claim under . . . Underinsured Motor Vehicle Coverages . . . must . . . be examined as reasonably often as ***we*** may require by physicians chosen and paid by ***us***. A copy of the report will be sent to the ***person*** upon written request.").

ORDER – 9

examination, which unfortunately was not completed. *See id.* Exs. F-H; Dkt. # 28 (O'Halloran Decl.) Exs. 3-4.

The Court begins with whether Mr. Fox has put his physical or mental condition in controversy.[2] Defendant contends that there can be little question that Mr. Fox has put his physical condition in controversy because he seeks payment of benefits for injuries allegedly covered under his insurance policy's UIM coverage. *See* Dkt. # 19 at 4. Additionally, Defendant notes that Mr. Fox is claiming future medical expenses and that he has actually increased his estimate of those damages as discovery has gone on. *See* Dkt. # 19 at 4-5; Dkt. # 31 at 2; *compare* Dkt. # 20-1 (Aragon Decl.) Ex. A at 12 *with* Dkt. # 32-1 (Aragon Decl.) Ex. K at 2. Plaintiffs argue that Rule 35 exams are inappropriate for past conditions and contend that Mr. Fox's condition is only a past condition and not ongoing. *See* Dkt. # 27 at 6.

The Court has some difficulty understanding Plaintiffs' argument. The Complaint alleges that Mr. Fox "has suffered severe injuries that are permanent, painful and progressive, and had incurred, *and may continue to incur*, economic damages."[3] Compl. ¶ 4.5 (emphasis added). In fact, as Defendant rightly notes, Plaintiffs' discovery materials indicate that Mr. Fox requires ongoing and future medical treatment for his condition. *See* Dkt. # 20-1 (Aragon Decl.) Ex. A at 12 (estimating future medical expenses of $25,000.00); Dkt. # 32-1 (Aragon Decl.) Ex. K at 2 (estimating future medical expenses of not less than $50,000.00). The extent of those injuries is plainly interrelated with Plaintiffs' breach of contract claim. Other courts have noted that "the fact that plaintiff alleges numerous health-related injuries, sought treatment for these injuries, and seeks damages for past and future medical expenses, puts plaintiff's mental state 'genuinely in controversy.'" *Bell v. U.S. Dep't of Interior*, No. 2:12-CV-01414

---

[2] Rather frustratingly, Plaintiffs bury their concession that Mr. Fox's physical condition is in controversy at the tail end of their Opposition. *See* Dkt. # 27 at 9.

[3] "Economic damages" are defined as including "medical expenses." RCW 4.56.250(1)(a).

ORDER – 10

TLN, 2013 WL 4482907, at *8 (E.D. Cal. Aug. 19, 2013) (quoting *Schlagenhauf*, 379 U.S. at 118).  Thus, even assuming that Plaintiffs' argument holds water, Mr. Fox is plainly claiming an ongoing injury, subverting that argument.

Plaintiffs' cited cases are largely inapposite.[4]  Plaintiffs' most heavily relied upon case, *McLaughlin v. Atlantic City*, No. CIV 05-2263 RMB, 2007 WL 1108527, at *3 (D.N.J. Apr. 10, 2007) found that an officer's mental health was in controversy even though it was not necessarily ongoing – the moment in controversy was four years before the case.  The *McLaughlin* court found that good cause did not exist because the plaintiff could not show that an IME of the officer's mental condition four years after the date where that officer's mental condition was in controversy would be relevant.  *See id.*  The court also noted that there were numerous other opinions provided about the officer's mental condition in 2004, which supplied the same information sought.  *See id.* at *4.  Similar to *McLaughlin*, the court in *Holt v. Ayers*, No. CV F-97-6210-AWI, 2006 WL 2506773, at *5 (E.D. Cal. Aug. 29, 2006) dealt with a requested mental exam 16 and 17 years after the points in which the plaintiff's mental condition was in controversy.

The Court finds that Mr. Fox has placed his physical condition in controversy.

Next, the Court turns to whether Defendant has established good cause for ordering the Rule 35 exam.  Courts have found that to demonstrate good cause, a party must show that the examination will find specific facts relevant to the claim and to the

---

[4] In *Kunstler v. City of New York*, 242 F.R.D. 261, 263 (S.D.N.Y. 2007), the court held that the defendants had not established good cause for a Rule 35 exam because some plaintiffs had all testified their injuries healed within a period of one week to four months. *Id.*  Here, Mr. Fox claims that his injuries necessitate future medical treatment and are not entirely healed.

In *Doe v. District of Columbia*, 229 F.R.D. 24, 27-28 (D.D.C. 2005), the court granted a Rule 35 exam because the plaintiff, like Mr. Fox, claimed an ongoing injury, the medical records were insufficient, and the doctor selected by the defendant was sensitive to the plaintiff's situation.

In *Womack v. Stevens Transp., Inc.*, 205 F.R.D. 445, 447 (E.D. Pa. 2001), the court found that plaintiff had placed his physical and mental condition in controversy because his pleadings alleged he continued to suffer physical and mental injuries.  The court also found good cause existed because the defendant would be forced to simply cross examine the plaintiff's experts' evaluations without the Rule 35 exam.  *Id.*

ORDER – 11

defendant's case. *See Ragge*, 165 F.R.D. at 609. However, in determining whether good cause exists, "[c]ourts must make fact-specific inquiries, and no one factor is dispositive, even in cases with allegations of emotional or psychiatric harm." *Muller*, 2015 WL 3793570 at *2 (citing *Duncan v. Upjohn Co.*, 155 F.R.D. 23 (D. Conn. 1994)).

Defendant has shown that such an examination will reveal facts relevant to the claim and to its defense. Specifically, because the extent of its liability is in part tied to the injuries Mr. Fox suffered, the reasonableness of his past medical treatment, the causes of his medical conditions, and the prognosis and necessity of his future wage loss and medical treatment is clearly relevant. Defendant certainly is entitled to independently contest the amounts sought beyond simply cross-examining Plaintiffs' experts.

Plaintiffs contend, however, that good cause requires a showing that the information sought is not available through other means. *See* Dkt. # 27 at 7. There is some case authority standing for that proposition. *See e.g., Pearson v. Norfolk-Southern Ry., Co., Inc.*, 178 F.R.D. 580, 582 (M.D. Ala. 1998). This Court believes that the better view is that this is simply a relevant factor, not an element of good cause. *See Ayat v. Societe Air France,* No. C 06-1574 JSW JL, 2007 WL 1120358, at *6 (N.D. Cal. Apr. 16, 2007). In any event, Defendant has shown that it has conducted significant discovery using other available means of discovery but have been unable to discover the facts they intend Dr. Brown to determine. *See* Dkt. # 31 at 3. Defendant has met its burden, if any, to show that this evidence is not available by other means.

In sum, the Court finds that both elements necessary to order a Rule 35 exam have been established by Defendant. What remains is perhaps Plaintiffs' chief complaint: the scope of the examination. Plaintiffs appear to contend that the exam should be limited solely to evaluating Mr. Fox's current and future condition. *See* Dkt. # 27 at 9. The Court disagrees. Mr. Fox has placed his past, present, and future physical condition in controversy and Defendant is entitled to a Rule 35 exam to evaluate his claims pertaining to his past treatment. That includes a determination as to causation – including an

ORDER – 12

intervening altercation alluded to by Defendant (*see* Dkt. # 31 at 4) – and the reasonableness of such treatment. While Mr. Fox's medical history may be strongly probative of such facts, there is no reason to believe in this instance that they will be conclusive.

## V.   CONCLUSION

In sum, the Court **ORDERS** as follows:

1. Defendant's Motion for a Protective Order (Dkt. # 38) is **GRANTED** as unopposed.
2. Plaintiffs' Motion for Leave to Amend (Dkt. # 23) is **DENIED** as untimely and for lack of good cause to amend the scheduling order.
3. Defendant's Motion to Compel (Dkt. # 19) is **GRANTED**.
    a. The exam will be conducted by Alan Brown, MD. The Rule 35 examination must be undertaken **within 14 days** of this Order.
        i. The Parties are to meet and confer **within 3 days** of this Order to determine a mutually agreeable time and place for the Rule 35 exam.
        ii. The scope of the examination is limited solely to a physical exam to evaluate the reasonableness of Mr. Fox's past medical treatment, the causation of his medical conditions, and the prognosis and necessity of his future wage loss and medical treatment.
    b. To alleviate prejudice to the Parties, the Court will permit a small extension to the discovery deadline solely to accommodate the Rule 35 examination.
        i. To alleviate any prejudice to the Plaintiffs, Plaintiffs are permitted to retain and disclose a rebuttal expert and his report within 30 days after Dr. Brown supplies a Rule 35 report.

ORDER – 13

          ii. Defendant must make Dr. Brown available for a deposition at a mutually convenient time.

          iii. The Parties should not expect any other extensions to the discovery deadline.

DATED this 26th day of January, 2016.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court

ORDER – 14